## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

JOHN C.,[1]

      **Plaintiff,**

                          **Case No. 1:20-cv-20442**

      **v.**                           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On April 24, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since February 14, 2017,[3] due to a number of physical and mental impairments. R. 147,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff later amended his alleged onset date to March 31, 2018. R. 10, 50.

161, 265–71. The application was denied initially and upon reconsideration. R. 164–68, 170–73. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 174–75. ALJ John Campbell ("ALJ") held a hearing on June 24, 2019, at which Plaintiff, who was represented by counsel, testified. R. 100–18, 119–37 (duplicate). The ALJ held a second administrative hearing on December 4, 2019, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 42–99. In a decision dated January 28, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2018, Plaintiff's amended alleged disability onset date, through the date of that decision. R. 10–28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 2, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 25, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[4] On January 26, 2021, the case was reassigned to the undersigned. ECF No. 5. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, he must give some indication of

the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous
period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on his amended alleged disability onset date. R. 26. Plaintiff
meets the insured status requirements of the Social Security Act through December 31, 2023.
R. 12. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity
between March 31, 2018, his amended alleged disability onset date, through the date of the
decision. R. 13.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:
chronic pain syndrome, spondylosis of the lumbar region; lumbar disc herniation; right shoulder
bursitis; and cervical spondylosis with radiculopathy (protrusion of disc at cervical spine). R. 13.
The ALJ also found that the following diagnosed impairments were not severe: hypertension;
gastroesophageal reflux disease ("GERD"); erectile dysfunction ("ED"); sleep apnea; bilateral
carpal tunnel syndrome; depressive, bipolar and related disorders and adjustment disorders. R.
13–17.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of
impairments that met or medically equaled the severity of any Listing. R. 17–18.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to
various additional limitations. R. 18–26. The ALJ also found that this RFC did not permit the
performance of Plaintiff's past relevant work as a heavy equipment operator and a construction
worker. R. 26.

At step five, the ALJ found that a significant number of jobs─*e.g.,* jobs as a laundry
folder, a package sorter, and a mail room clerk─existed in the national economy and could be

performed by Plaintiff. R. 27–28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 31, 2018, his amended alleged disability onset date, through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five, and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 29. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28.

## IV.    DISCUSSION

### A.    Wrist/Hand Impairment

Plaintiff complains that the ALJ erred in considering Plaintiff's "wrist impairment" (also identified by Plaintiff as "wrist and hand problems" and "hand/wrist impairments") when the ALJ failed to find this impairment severe at step two and when the ALJ failed to adequately account for this impairment when crafting the RFC determination at step four. *Plaintiff's Brief*, ECF No. 21, pp. 9–15; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1–5. For the reasons that follow, this Court disagrees.

At step two, an ALJ determines whether the plaintiff has an impairment or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d

8

Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

In the case presently before the Court, the ALJ decided in Plaintiff's favor at step two, finding that Plaintiff's chronic pain syndrome, spondylosis of the lumbar region, lumbar disc herniation, right shoulder bursitis, and cervical spondylosis with radiculopathy (protrusion of disc at cervical spine) are severe. R. 13. The ALJ went on to explain why he did not find Plaintiff's additional impairments to be severe. R. 13–17. In doing so, the ALJ expressly considered Plaintiff's wrist/hand impairments and explained why he did not find those impairments to be severe:

> Further, as to bilateral carpal tunnel syndrome, an electromyography and nerve conduction study (EMG-NCV) of the upper extremities in February 2018 described his bilateral carpal tunnel syndrome as being only "mild" in nature (Exhibit 23F/17). Further, while the record documents some abnormal wrist-area exam findings, like subjective tenderness, reduced strength or positive Tinel's signs, as detailed at length in the Finding Five discussion, the same were so noted in the context of treatment for, or otherwise secondary to, cervical radiculopathy rather than for carpal tunnel syndrome standing alone (Exhibits 13F; 23F; 24F). Moreover, the record documents a conservative course of treatment for bilateral carpal tunnel syndrome consisting simply of wrist splints, rather than a multi-formed (albeit conservative) course of treatment for the claimant's severe impairments (Exhibits 1F-25F).

R. 14. The Court sees no error with the ALJ's consideration in this regard. *Cf. Little v. Kijakazi*, No. 1:21-CV-00492, 2023 WL 2478555, at *3–4, 11 (M.D. Pa. Mar. 13, 2023) (rejecting argument that the ALJ ignored, *inter alia*, the claimant's wrist impairment where the ALJ expressly explained why the claimant's wrist pain was non-severe at step two and did not warrant any additional limitations in the RFC for light work). To the extent that Plaintiff challenges the ALJ's consideration of certain evidence—the EMG-NCV from February 2018 and positive Tinel's signs—Plaintiff's argument simply boils down to a disagreement with the ALJ's findings and  conclusions. The Court declines Plaintiff's invitation to reweigh the evidence in this regard. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). In any event, the ALJ went on to evaluate Plaintiff's impairments—including Plaintiff's non-severe wrist/hand condition—through the remainder of the five-step sequential evaluation. R. 17–28. Accordingly, even if the ALJ erred by not finding other severe impairments at step two of the sequential evaluation, any such error is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

Plaintiff, however, complains that the ALJ's failure to properly consider Plaintiff's wrist/hand impairment at step four resulted in a flawed RFC determination. *Plaintiff's Brief*, ECF No. 21, pp. 14–15; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1–5. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler,* 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined at step four that Plaintiff had the RFC to perform a reduced range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: Occasionally climb ramps/stairs. Never ropes/ladders/scaffolds. Occasionally balance, stoop, kneel, crouch, and crawl. With the bilateral upper extremities, frequent finger/handle, frequent reach front and side, and occasional reach overhead. Does not work at unprotected heights. Does not work near exposed moving mechanical parts. Does not operate dangerous heavy machinery or equipment such as that which tears, crushes, shears or punctures in its operations.

R. 18. In making this determination, the ALJ noted, *inter alia*, that the record reflected "mild" bilateral carpal tunnel syndrome, arm weakness, and decreased wrist strength and tenderness, but only sporadic findings of decreased ranges of left wrist motion and no noted deficit or abnormalities in arm/hand use. R. 19–21. The ALJ also explained that he accounted for Plaintiff's subjective allegations—including subjective allegations of pain—when crafting the RFC, which limited Plaintiff to, *inter alia*, frequent finger/handle, frequent reach front and side, and occasional reach overhead. R. 18, 22. Based on this record, this Court concludes that the ALJ adequately accounted for Plaintiff's wrist/hand impairments at step four.

Plaintiff insists that the ALJ erred in crafting the RFC and that the ALJ should have incorporated Plaintiff's wrist strength findings into the RFC and should have accounted for "all conditions potentially affecting" Plaintiff's ability to work. *Plaintiff's Brief*, ECF No. 21, pp. 13–15; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1–5. Plaintiff also specifically complains that the ALJ failed to consider the impact of Plaintiff's need to wear splints/braces on his ability to use his hands. *Plaintiff's Brief*, ECF No. 21, p. 14; *Plaintiff's Reply Brief*, ECF No. 29, p. 3. Plaintiff's arguments are not well taken. As detailed above, the ALJ considered Plaintiff's decreased wrist strength when crafting the RFC, and limited Plaintiff to, *inter alia*, light work with frequent finger/handle, frequent reach front and side, and occasional reach overhead. R. 18, 20. Although the ALJ did not expressly discuss, at step four, Plaintiff's use of hand splints, he did consider records reflecting such use when crafting the RFC, R. 19–21, 23 (citing, *inter alia*, Exhibit 24F, R. 922–80), in addition to noting the use of hand splints at step two when concluding that Plaintiff's bilateral carpal tunnel syndrome was non-severe, R. 13–14. Notably, Plaintiff does not explain why the RFC limitations fail to accommodate his use of hand splints. *See Plaintiff's Brief*, ECF No. 21, p. 14; *Plaintiff's Reply Brief*, ECF No. 29, p. 3. Nor does

Plaintiff identify any different or additional restrictions that the ALJ should have included to accommodate Plaintiff's use of hand splints. *See id.* Accordingly, and considering the fact that the ALJ specifically considered Plaintiff's physical limitations relating to his hands and wrists when crafting the RFC, the ALJ's failure to expressly discuss hand splints at step four is, at most, harmless error and does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"); *Nicole R. v. Comm'r of Soc. Sec.*, No. CV 21-10775, 2022 WL 2314837, at *6–7 (D.N.J. June 28, 2022) ("Importantly, the ALJ incorporated restrictions related to Plaintiff's carpal tunnel, including limitations in Plaintiff's use of her hands and wrists and therefore, additional specific limits associated with the wrist braces would simply be redundant and unnecessary, and any error the ALJ may have made by failing to specifically consider Plaintiff's use of the wrist braces would be harmless.").

Finally, although Plaintiff complains that the ALJ should have accounted "for all *conditions* that *potentially* affect[ed]" Plaintiff's ability to work, *Plaintiff's Brief*, ECF No. 21, p. 14 (emphasis added), "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, the Court has already explained that the ALJ must include only "credibly established"—not speculative—limitations in the RFC

determination. *Rutherford*, 399 F.3d at 554; *Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (cleaned up).

In short, even if the ALJ erred in finding at step two that Plaintiff's carpal tunnel syndrome was not severe, any such error is harmless because the ALJ found that other impairments were severe, R. 13, and continued to evaluate Plaintiff's hand and wrist impairment through the remainder of the five-step sequential evaluation, including when crafting the RFC at step four. R. 18–28. Accordingly, Plaintiff has not shown that the ALJ's consideration of Plaintiff's hand/wrist impairment–including a failure to find that impairment to be severe at step two or considering this impairment when crafting the RFC at step four–warrants remand.

**B.     Subjective Complaints**

Plaintiff also challenges the ALJ's consideration of his subjective complaints on a number of bases. *Plaintiff's Brief*, ECF No. 21, pp. 15–21; *Plaintiff's Reply Brief*, ECF No. 29, pp. 5–11. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental

14

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

In the present case, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 19. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. The ALJ also detailed years of medical evidence and record testimony to support his findings, including, *inter alia*, a conservative course of treatment consisting of medication, physical therapy, recommendations to do daily exercises, medial branch block, injections, and the use of a transcutaneous nerve stimulation ("TNS") unit following surgeries that had occurred years before the amended alleged disability onset date of March 31, 2018, *i.e.*, left shoulder surgery in 1996 and right shoulder surgeries in 2012 and 2013; generally normal or minimal examination findings without any noted distress and no pain behaviors while seated during examination with no noted assistive device use and only sporadic examination findings of subjective right shoulder area tenderness or pain, decreased upper arm area strength and range of motion, positive spinal facet load testing, and positive Tinel's testing; and ability to perform self-care and daily life activities. R. 18–26. The ALJ summarized Plaintiff's treatment records as follows:

> Significantly, exams in the above-treatment records otherwise revealed that the claimant was alert, fully oriented, not in any noted distress, and/or not displaying any pain behaviors while seated during exam, without any noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity or deformity. These records also otherwise document exam findings of normal or "good" ranges of motion ("all joints", left shoulder, right shoulder), "no significant" joint motion loss, negative straight leg raising, negative Tinel testing, normal strength, intact sensation, a normal gait, normal heel walking, and/or no noted motor, strength, sensory, arm/hand use or gait deficit or abnormalities. (For Virtua exams, see Exhibits 1F/21, 22, 57, 58, 63, 72, 77, 80, 83, 85, 86, 88; 2F/8, 11, 31, 51, 56, 60, 61, 67, 68; 14F/2, 3, 7, 8, 10, 12, 15, 16, 19, 21, 23, 24, 27, 28, 31, 33, 35, 36, 38, 39, 41, 42, 45, 46. For Shore Ortho exams, see Exhibit 6F/5, 8, 11, 17, 18, 20, 24,

26, 33; 12F/1, 18, 24, 47, 51, 52. For Advanced exams, see Exhibits 17F/3; 23F/3, 8, 13, 19, 20, 25, 31, 32; 24F/2, 8, 14, 15, 20, 21, 26, 27, 33, 40, 41, 47, 48, 53, 57. For RA pain exams, see Exhibits 13F/2, 3, 6, 7, 11, 12, 15, 16, 20, 24, 25; 16F/6; 25F/1. For Pro Pain exams, see Exhibit 22F/4, 11).

R. 21.

Simply stated, despite symptoms and alleged medication side effects, the record reveals a conservative course of treatment, other than shoulder surgeries that occurred without reported complication remote in time prior to the alleged onset date, and generally normal, with only minimal, findings. Further, the extent of the claimant's alleged limitations is not entirely consistent with the same.

R. 22. The ALJ went on to explain why Plaintiff's daily life activities and statements undermined

his alleged limitations as follows:

Turning to the claimant's actions and admissions, the same are also not entirely consistent with the extent of his alleged limitations. For example, the claimant reported that his daily routines have "slowed" down as well as sleeping in a recliner every night, needing help maintaining his ponytail from his wife and daughter, having some trouble with donning a raincoat, and no longer being able to do certain sports (bow hunting, fishing, softball). However, he also reported not using any assistive devices, performing personal care activities, not needing help with dressing, preparing simple meals, playing with and putting 10 pounds dogs on his lap, shopping in the supermarket alone, and driving (including to the hearing for an hour, albeit had to stretch halfway to the hearing location). He further reported, at home, operating a push mower and working on a flowerbed and shrubbery around his house, including pulling weeds and throwing down mulch (in season) (albeit asks for help getting a mulch bag into his truck at the store, the Home Depot). (Exhibit 6E; Hearing Testimony). The treatment records also note the claimant reporting that his medication regimen "has been helping him to stay active", denying medication side effects, and "considering retirement/disability as he was offered to go back to work as a custodian" (Exhibits 13F/1; 25F/1, 3).

Simply stated, the claimant's actions and admissions reveal that he is not as limited as he alleged from a physical (or mental health) standpoint.

Therefore, this evidence, including objective findings, course of treatment, and the claimant's actions and admissions fully supports the assessed residual functional capacity. Further, this evidence, and the evidence set forth in the Finding Three discussion, does not support the assessment of different or additional limitations. Additionally, the undersigned accounted for the claimant's subjective allegations (including, but not limited to, pain) and alleged medication side effects when making this assessment.

*Id.* In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Miller*, 719 F. App'x at 134; *Phillips*, 91 F. App'x at 782 (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to discount the claimant's subjective complaints); *Van Horn*, 717 F.2d at 873.

Plaintiff, however, challenges the ALJ's assessment in this regard on a number of bases. Plaintiff first contends that the ALJ summarized only selected medical evidence and inappropriately downplayed Plaintiff's pain and orthopedic limitations. *Plaintiff's Brief*, ECF No. 21, pp. 17–19; *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8. Plaintiff specifically complains that many of the examination findings revealed tenderness and spasm and that the ALJ improperly discounted Plaintiff's 2014 cervical and 2015 lumbar MRIs and did not "incorporate sufficient handling or fingering limitations despite a February 2018 EMG-NCV[.]" *Id.* Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff concedes that the ALJ acknowledged that the physical examinations revealed, *inter alia*, tenderness and spasms when he considered the record evidence and crafted the RFC determination. R. 19–21, 23. To the extent that these findings contradicted other normal or minimal examination findings—such as no noted distress; and/or not displaying any pain behaviors while seated during exam; no noted assistive device use, atrophy, edema, swelling, joint instability, joint laxity or deformity; normal or "good" ranges of motion ("all joints", left shoulder, right shoulder); "no significant" joint motion loss; negative straight leg raising; negative Tinel testing; normal strength; intact sensation; a normal gait; normal heel walking; and/or no noted motor, strength, sensory, arm/hand use or gait deficit or abnormalities—it was the ALJ's duty to resolve the "not uncommon situation of conflicting medical evidence[.]" *Hatton*, 131 F. App'x at 880. Moreover,

even if Plaintiff cites to evidence that he believes supports his position, including evidence that Plaintiff's condition had worsened, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff complains that the ALJ erred in his consideration of the 2014 and 2015 MRIs and of the 2018 EMG-NCV, *Plaintiff's Brief*, ECF No. 21, p. 19, which the ALJ considered as follows:

> In addition, in terms of diagnostic imaging and testing, the undersigned notes, while cervical spine MRIs revealed a left lateral recess herniation effacing the left lateral recess at C5-6 in September 2014 and stenosis with disc protrusions in July 2015, they failed to reveal any noted fracture, dislocation, or nerve root impingement. Further, the MRI of July 2015 additionally revealed that the herniation at C5-6 was "smaller" as compared to the prior study, without any noted effacement. (Exhibits 10F/3; 13F/1; 19F/4; 23F/42).

> Further, while a lumbar spinal MRI in July 2015 revealed degenerative changes with disc bulging/protrusions, nerve root impingement at the L3, and nerve root compression at L4, this MRI failed to reveal any noted fracture, dislocation, or thecal sac compromise (Exhibit 10F/1; 19F/5).

R. 21. To the extent that Plaintiff believes that this evidence supports his assertions, that argument is unavailing for reasons already explained: it was the ALJ who had the duty to resolve any conflicting medical evidence and, so long as substantial evidence supports the ALJ's decision, the Court will uphold that decision even if contrary evidence supports the opposite result. *See Johnson*, 497 F. App'x at 201; *Hatton*, 131 F. App'x at 880. Moreover, as previously discussed, a diagnosis, without more, does not establish corresponding limitations. *See Foley*, 349 F. App'x at 808; *Phillips*, 91 F. App'x at 780. In any event, Plaintiff has not explained why

the ALJ's RFC determination fails to accommodate these "spine related symptoms" revealed in the 2014 and 2015 MRIs or why the limitation to frequently fingering/handling, frequent reaching from side to side, and occasional reaching overhead does not sufficiently accommodate the conditions revealed in the 2018 EMG-NCV. *Plaintiff's Brief*, ECF No. 21, p. 19. Plaintiff simply points to this evidence without explaining how such evidence supports his allegation of reversible error in the ALJ's decision. *Id.*; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Plaintiff's argument, therefore, apparently boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

Plaintiff goes on to complain that the ALJ downplayed Plaintiff's "pain and orthopedic limitations due to gaps in treatment" and "failed to discuss that the case involved workers' compensation so that the insurance company decided where and when treatment would occur and stopped paying once it appeared that there was a limited chance of improvement." *Plaintiff's Brief*, ECF No. 21, p. 17. The Court is not persuaded that this issue requires remand. As a preliminary matter, the ALJ expressly considered orders from the State of New Jersey's Division of Worker's Compensation at step four of the sequential evaluation. R. 25. Moreover, Plaintiff provides no citation to the record that "the insurance company" "stopped paying once it appeared

20

that there was a limited chance of improvement" or that the ALJ discounted Plaintiff's subjective

complaints on this—or any related—basis. *Plaintiff's Brief*, ECF No. 21, p. 17. The Court will

not hunt through the record to support Plaintiff's arguments. *See Atkins v. Comm'r Soc. Sec.*, 810

F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the

record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)

(internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his

Court has frequently instructed parties that they bear the responsibility to comb the record and

point the Court to the facts that support their arguments."). Notably, even were this Court to

accept Plaintiff's unsupported assertion, he again fails to explain how this assertion undermines

the ALJ's assessment of Plaintiff's subjective complaints which, as stated previously, is

otherwise supported by substantial evidence. *See Plaintiff's Brief*, ECF No. 21, p. 17; *see also*

*Padgett*, 2018 WL 1399307, at *2.

Plaintiff also challenges the ALJ's consideration of Plaintiff's conservative treatment

history when discounting Plaintiff's subjective complaints, contending that the ALJ improperly

failed to acknowledge or consider Plaintiff's treatment history and persistent attempts to find

relief and that the ALJ did not explain what treatment Plaintiff should have undergone in order to

credit his allegations. *Plaintiff's Brief*, ECF No. 21, pp. 17–20; *Plaintiff's Reply Brief*, ECF No.

29, pp. 5–6 (citing *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008); SSR

16-3p). This issue does not persuade the Court that remand is required. As a preliminary matter,

the ALJ fairly characterized Plaintiff's treatment history as conservative, which consisted of

medication, physical therapy, recommendations to do daily exercises, medial branch block,

injections, and TNS unit use following surgeries that had taken place years before the amended

alleged disability onset date of March 31, 2018. R. 19; *see also Louis v. Comm'r Soc. Sec.*, 808

21

F. App'x 114, 119 (3d Cir. 2020) (referring to medical branch nerve block injection as "conservative treatment"); *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as "relatively routine and conservative treatment"); *Mancini v. Kijakazi*, No. 20-874, 2021 WL 5909817, at *3 n.2 (W.D. Pa. Dec. 14, 2021) (finding substantial evidence supported the ALJ's characterization of treatment as "routine and conservative" where the claimant's "treatment was limited to trigger point injections; conservative chiropractic care; physical therapy, a TENS unit; medication; and a cervical medial branch block"); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"). The ALJ did not err when considering Plaintiff's conservative treatment in evaluating Plaintiff's subjective statements. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 198 (3d Cir. 2012) (finding that the "ALJ explained his reasons for discrediting [the claimant's] subjective testimony and pointed to several objective medical findings that contradicted [the claimant's] subjective complaints" where the claimant underwent back surgery in 2007, and, thereafter, "there was objective medical evidence that did not support [the claimant's] subjective complaints of disabling pain[,]" including, *inter alia*, that Plaintiff's two physicians "continued to prescribe conservative care throughout this period"); *Phillips*, 91 F. App'x at 782 (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to discount the claimant's subjective complaints). While Plaintiff complains that the ALJ did not properly consider his "[p]ersistent attempts to obtain relief of symptoms" as consistent with his subjective allegations, *Plaintiff's Reply*, ECF No. 29, pp. 5–6 (citing SSR 16-3p); *see also Plaintiff's Brief*, ECF No. 21, pp. 17–18, the ALJ specifically considered the types of conservative care that Plaintiff pursued. R. 19. Moreover,

even if Plaintiff's treatment reflects "[p]ersistent attempts" pursuant to SSR 16-3p, that ruling simply provides that such efforts "*may* be an indication that an individual's symptoms are a source of distress and *may* show that they are intense and persistent." SSR 16-3p, 2017 WL 5180304, at *9 (emphasis added). Although the ALJ did not expressly characterize and consider Plaintiff's treatment as persistent attempts to obtain relief, the Court cannot say that any omission in this regard requires reversal of the ALJ's analysis of Plaintiff's subjective statements, which is otherwise supported by substantial evidence. *Cf. id.*; *Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Schmidt*, 465 F. App'x at 198. While Plaintiff goes on to complain that the ALJ failed to identify what treatment Plaintiff should have pursued, Plaintiff has not persuaded this Court that the ALJ erred in this regard, particularly where it is Plaintiff who bears the burden of proof at step four and the ALJ properly considered conservative treatment as but one factor when assessing Plaintiff's subjective statements.

In continuing to challenge the ALJ's consideration of Plaintiff's subjective statements, Plaintiff contends that the ALJ repeatedly suggests "that all findings of tenderness to palpation were 'subjective' as though such findings are insignificant[,]" but insists that such findings are, in fact, "clinically significant signs[.]" *Plaintiff's Brief*, ECF No. 21, pp. 18–19 (citations omitted); *see also Plaintiff's Reply Brief*, ECF No. 29, pp. 8–10. The Acting Commissioner disagrees, contending that a physician's notation of tenderness is based on a claimant's subjective complaints. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, p. 12 (citations omitted). The Court is not persuaded that this issue requires remand. It is true that the ALJ continually referred to findings of tenderness in the record as "subjective." R. 19–25. However, the Court need not resolve at this time whether the ALJ properly characterized such findings as subjective. Even if the ALJ erred in this characterization, he expressly stated that he

23

"accounted for the claimant's subjective allegations (including, but not limited to, pain)" when crafting the RFC. R. 22; *see also* R. 17 ("[T]he undersigned has reviewed and considered all severe and non-severe impairments *in formulating the residual functional capacity below*, and, where appropriate, *the undersigned has included limitations to address the* claimant's non-severe impairments and *subjective complaints*") (emphasis added). Plaintiff, who bears the burden of proof at step four, has not explained how any error in characterizing tenderness findings as subjective harmed him based on this record, including identifying what different or additional limitations the ALJ should have included in the RFC determination. *See Plaintiff's Brief*, ECF No. 21, pp. 18–19; *Plaintiff's Reply Brief*, ECF No. 29, pp. 8–10.

In his final challenge, Plaintiff complains that the ALJ characterized Plaintiff's daily activities "as 'actions and admissions; and fail[ed] to properly consider attendant caveats and limitations." *Plaintiff's Brief*, ECF No. 21, p. 20 (citing R. 22); *see also Plaintiff's Reply Brief*, ECF No. 29, p. 10 (insisting that the ALJ failed to properly consider his daily activities under regulation). This Court disagrees. As a preliminary matter, an ALJ may consider a claimant's daily activities when assessing that claimant's subjective complaints and testimony. *See* 20 C.F.R. § 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted). Notably, as previously discussed,

the ALJ expressly considered Plaintiff's limitations when performing his daily activities, including "that his daily routines have 'slowed' down as well as sleeping in a recliner every night, needing help maintaining his ponytail from his wife and daughter, having some trouble with donning a raincoat, and no longer being able to do certain sports (bow hunting, fishing, softball)"; needing to stretch halfway into the hour-drive to the administrative hearing; and asking for help getting a  mulch bag into his truck at the store. R. 22.

Although Plaintiff insists that the ALJ improperly failed to account for Plaintiff's "detailed testimony about his daily activities" that was purportedly more limited than described by the ALJ, *Plaintiff's Brief*, ECF No. 21, p. 21, Plaintiff has not shown that this issue requires remand. For example, Plaintiff points to testimony that "he does very little work around the house[,]" *id.* (citing R. 62, 77), but the ALJ noted that Plaintiff also reported preparing simple meals and playing with and putting 10-pound dogs in his lap, R. 22 (citing Exhibit 6E, R. 333–41 (Plaintiff's Function Report); Hearing Testimony, R. 54–78). Plaintiff argued that he "tries to mow the lawn but pays friends to come over and help with yard work[,]" *Plaintiff's Brief*, ECF No. 21, p. 21 (citing R. 62, 76), but he specifically testified that he tries to "cut the grass every week" with a push lawn mower, R. 62, and "tr[ies] to do the flowerbeds as best as I can" by pulling weeds and "[s]ometimes" by "throw[ing] a bag of mulch down" but "[*a*]*nything else*, I have to call friends over to pay them or have them help me out[,]" R. 62 (emphasis added), or "[a]nything heavier [than a bag of mulch], I'll have my neighbor come over and help me with." R. 76. Plaintiff also points to testimony that he drops items and cannot feel them in his hand, that buttoning is nearly impossible and writing with a pen is difficult. *Plaintiff's Brief*, ECF No. 21, p. 21 (citing R. 68–69). However, the ALJ noted that Plaintiff's examinations revealed intact sensation and no noted deficits or abnormalities in the use of Plaintiff's arms and hands, R. 20–

21, and the ALJ discounted a medical statement that Plaintiff could not grasp or drive with his right hand because Plaintiff testified, *inter alia*, that he did not need help with dressing and that he prepared simple meals, performed yardwork, grocery shopped alone, and drove a vehicle, R. 23–24. In short, to the extent that there exists contradictory evidence in the record related to Plaintiff's daily activities, the ALJ appropriately resolved such conflict. *See Hatton*, 131 F. App'x at 880; *see also Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that '[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them,' particularly where such statements are undermined by evidence of a more active lifestyle.") (quoting *Chandler,* 667 F.3d at 363). To the extent that Plaintiff insists that the Court accept his contrary position, the Court declines Plaintiff's invitation. *See Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

### C.    Age and the Grids

Plaintiff also complains that the ALJ did not properly consider whether Plaintiff became eligible for benefits as of his 50th birthday. *Plaintiff's Brief*, ECF No. 21, pp. 21–22. He generally contends that, had the ALJ had "given proper consideration" to the record evidence, "it is clear" that Plaintiff could not perform light exertional work, but Plaintiff offers no further explanation or citation to the record to support this conclusory assertion. Plaintiff's conclusory, undeveloped argument is not well taken. *See Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019). Plaintiff's assertion that, assuming that he could perform a full range of unskilled sedentary work at age 50 on December 31, 2018, "Grid Rule 201.14 directs a finding of disabled[,]" *Plaintiff's Brief*, ECF No. 21, p. 22, is equally unavailing because the ALJ sufficiently explained why Plaintiff was limited to a limited range of light exertion, not sedentary exertion, for the reasons previously discussed. R. 18–26.

### D.    Step Five

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to carry the Commissioner's assigned burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 21, pp. 22–23. Plaintiff's argument is not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC and vocational profile, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008)

(citing *Rutherford*, 399 F.3d at 551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental"

limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 18, 80–82. The vocational expert responded that the jobs of laundry folder, package sorter, and mail room clerk could be performed by such an individual. R. 82. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all his alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Plaintiff goes on to complain that the ALJ "failed to rely on hypothetical questioning that fully accounted" for his "wrist/hand impairment or his improperly discounted subjective complaints." *Plaintiff's Brief*, ECF No. 21, p. 23. Plaintiff's argument is not well taken. As previously discussed, an ALJ must include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554. "'[I]t would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)). The fact that the ALJ also posed to the

vocational expert an alternative hypothetical question that contained more or different limitations than did the RFC actually found by the ALJ is irrelevant when the RFC ultimately found by the ALJ is supported by substantial evidence. *See Knittle v. Kijakazi*, No. 1:20-CV-00945, 2021 WL 5918706, at *6 (M.D. Pa. Dec. 15, 2021) ("'[S]imply because a hypothetical was posed does not mean that there was sufficient evidence to support it; the ALJ ultimately relies upon only credible, medically established limitations.'") (quoting *Menuto v. Astrue*, No. 11-264, 2012 WL 2594339, at *9 (W.D. Pa. June 13, 2012), *adopted by* 2012 WL 2594340 (W.D. Pa. July 5, 2012)); *cf. Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218; *Chrupcala*, 829 F.2d at 1276 ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.").

In short, the Court finds that the Commissioner carried the burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

## V.   CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  July 11, 2023                          *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE